**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

CURTIS PAPERS, INC.
f/k/a ROYAL BLUE PAPERS, INC.

    Debtors and Debtors-in-Possession         Chapter 11
                                                                     Case No. 03-46139 (KCF)
- - - - - - - - - - - - - - - - - - - - - - - - - -X

CURTIS PAPERS, INC.
f/k/a ROYAL BLUE PAPERS, INC.

    Plaintiffs,

        vs.                                                    Adversary No. 07-1245

TOWN OF ADAMS

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Document Number 9)

**APPEARANCES:**

Squire, Sanders & Dempsey
Nicholas J. Brannick, Esquire
Kristin E. Richner, Esquire
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215
Attorneys for Plaintiffs Curtis Papers, Inc.
f/k/a Royal Blue Papers, Inc.

Sterns & Weinroth
Andrea Dobin, Esquire
Michelle Lamar, Esquire
50 West State Street, Suite 1400
PO Box 1298
Trenton, New Jersey 08607-1298
Attorneys for Defendant, Town of Adams

On February 26, 2007, Curtis Papers ["Curtis" or the "Debtor" or "Plaintiff"] initiated this adversary proceeding against Town of Adams, MA [the "Town" or "Adams" or "Defendants"]. The Curtis Complaint contained 10 counts:

Count I – Avoidance of Lien Entered in Violation of § 362 of the Bankruptcy Code.
Count II - Avoidance of Lien Pursuant to Section 545 of the Bankruptcy Code.
Count III – Avoidance of Transfer Pursuant to § 549 of the Bankruptcy Code.
Count IV – Failure to File Certificate Under Mass. Gen. Law ch. 83, § 16.
Count V - Avoidance of Alleged Lien Pursuant to 11 U.S.C. § 544(a).
Count VI – Declaratory Judgment as to Municipal Lien Certificates –Mass Gen. Law ch. 60, §23.
Count VII – Liability of Town as Transferee Pursuant to 11 U.S.C. § 550.
Count VIII - Determination of Tax Liability Pursuant to 11 U.S.C. § 505.
Count IX – Objection to Claim Pursuant to Federal Rule of Bankruptcy Procedure 3007.
Count X – Preservation of Avoidance for Benefit of Estate Pursuant to 11 U.S.C. § 551.

The Town's response sought dismissal of all counts and asserted three counterclaims against the Debtor. Curtis now moves for summary judgment on Counts I, III, IV, VI, VII, IX, and X and on the Town's counterclaims on Counts 1 and II.

## FACTUAL BACKGROUND

Many of the relevant facts are undisputed. Curtis purchased real property in the Town from the bankruptcy estate of Crown Paper Co. on March 1, 2001 and obtained title to three registered parcels of land and one unregistered parcel (collectively, the "Property"). The Property contains improvements on the land, including a paper manufacturing facility (the "Mill"). Debtor bought the Property "free and clear of all liens, claims, encumbrances, and interests." (Debtor's Motion Ex. 1). Pursuant to a First Interim Agreement, the Debtor and the Town agreed that the Town would convey and process the Debtor's wastewater through the Town's facilities. For this service, the Debtor would pay 17% of the actual operating costs of the wastewater treatment facility, with unpaid monthly balances subject to an additional 1.5% per month. The agreement commenced on July 1, 2001 and ended on September 30, 2001. The parties entered into a Second Interim Agreement

governing from March 1, 2002 to September 30, 2002. The terms of the Second Interim Agreement were essentially the same as the First, except that the Debtor was to pay 17.7% of the actual operating cost. After the Second Interim Agreement expired, the parties agreed to a Permanent Agreement to commence retroactively from September 30, 2002 for a period of one year. Under the Permanent Agreement, the Debtor was to pay 25% of the annual operating cost of the water treatment facility or no less than $330,000 annually. The finance charges for late fees remained unchanged, but the Permanent Agreement was clear that the Debtor was to make quarterly payments. For reasons not clearly explained in the Town's answer to the complaint, the Town never implemented the Second Interim Agreement or the Permanent Agreement. It is undisputed that the Town enforced the First Interim Agreement at all times. (Town's Answer at 36).

The Debtor closed the Mill in July 2003 but continued limited operations until October 2003 in order to fill existing orders and sell inventory. On November 4, 2003, the Debtor executed a Deed of Assignment For the Benefit of Creditors (the "ABC" proceedings) under Chapter 1313 of the Ohio Revised Code, which was filed with the Probate Court for Hamilton County, Ohio. On the same day, five of the Debtor's creditors filed an involuntary Chapter 7 petition in the District of New Jersey. The case was assigned to Judge Lyons.

Here, the procedural history begins to get complicated. Proceedings were conducted in Massachusetts, Ohio, and New Jersey. In September 2003, prior to the ABC proceedings or the filing of the bankruptcy petition, the Town had filed a complaint in the Department of the Trial Court, Superior Court Division in Massachusetts for unpaid property taxes and sewer usage fees based on breach of the Second Interim Agreement. On September 25, 2003, the Massachusetts Court granted an order of prejudgement against the Property. On October 2, 2003, the Town then

filed Municipal Lien Certificates that enumerated the Town's position on the extent of Cutis's debt. In February of 2004, the Town obtained a default judgment against the Debtor in the Massachusetts Superior Court.

Meanwhile, on December 17, 2003, the Bankruptcy Court issued an "Order to Suspend Proceedings" whereby all proceedings in the Bankruptcy Case were "suspended" in favor of the ABC proceedings. Because the proceedings were suspended so quickly after the petition date, the Debtor was not required to complete schedules or even submit a list of creditors. Accordingly, no notice went out to creditors and there was no meeting of creditors. Under the auspices of the Ohio Court, the Debtor Assignee sold substantially all its equipment for $300,000. The Debtor Assignee also made preparations to sell the real property. The highest bid was for $375,000. However, the Town filed an objection to that sale on the basis that the Property had a fair market value of close to $2M. The prospective purchaser and the Debtor Assignee continued to negotiate, the net result being that the purchase price was reduced to $250,000. Also, in March 2004, the Town filed a proof of claim in the ABC proceedings. It also levied execution against personal and real property of the Debtor.

On February 8, 2006, the Bankruptcy Court entered the Stipulation and Agreed Order: (1) Vacating the Suspension Order; (2) Entering an Order for Relief; and (3) Converting Case from Involuntary Chapter 7 to Voluntary Chapter 11. The Debtor filed its list of twenty largest creditors on February 10, 2006 and included the Treasurer of the Town of Adams. The BNC sent its first notice to the Town of Adams on March 3, 2006. In April 2006, well before the June 28, 2006 deadline, the Town filed its first proof of claim in this Court.

On June 6, 2006, the Debtor filed a Motion before the Bankruptcy Court seeking *inter alia*, approval of bidding procedures. Judge Lyons denied the motion as unnecessary  The court entered

an Order of Recusal and transferred the entire case to Judge Ferguson on August 14, 2006.

Curtis filed an objection to the Town's proof of claim on August 28, 2006.  On September 20, 2006, Curtis also filed a Motion for an Order Authorizing the Sale of Real Property Free and Clear of all Liens, Claims and Encumbrances.  The Town objected to the sale.  The Court denied Curtis's sale motion pending resolution of the objection to the Town's claim.  In December 2006, Curtis withdrew its objection to the Town's proof of claim and instead, in February 2007, initiated this adversary proceeding seeking avoidance of the Town's lien claims.  The Town answered with a request for dismissal of the Debtor's counts and asserted three counterclaims.  On August 29, 2007, Curtis filed this motion seeking summary judgement in its favor on Counts I, III, IV, VI, VII, IX, and X.  Additionally, Curtis seeks summary judgment on the Town's counterclaims I and II in the Debtor's favor. The Town largely opposes the motions. [1]

## THE STANDARDS FOR SUMMARY JUDGMENT

"[S]ummary judgment is appropriate only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Summary judgment should not be granted if a reasonable jury based on that evidence could return a verdict for the nonmoving party.  In re CitX Corp., Inc., 448 F.3d 672 (3d Cir. 2006); Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005).  Whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." Tomalewski v. State Farm

---

[1] "Largely" because the Town argues, without cross motion that summary judgment may be entered in its favor on certain questions, such as the applicability of the stay during the suspension.

Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984)

While the moving party bears the burden of proving that there is no issue of material fact, once shown that burden switches to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Where the nonmoving party bears the ultimate burden of persuasion on a dispositive issue at trial, the nonmoving party must 'go beyond the pleadings' and, by way of affidavits, depositions, answers to interrogatories, or admissions on file "designate specific facts showing that there is a genuine issue for trial." Id. at 323. The evidence that the nonmoving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair-minded fact finder to return a verdict in favor of the non-movant, bearing in mind the applicable standard of proof that would apply at trial on the merits. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A dispute of fact exists when a reasonable jury could find for the nonmoving party. Id. at 248-49. Facts that could alter the outcome are material and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (Fed. Cir. 1995).

These standards apply to each of the counts presently before the court.

**Count I – Avoidance of Lien Entered in Violation of § 362 of the Bankruptcy Code**

**Count III - Avoidance of Transfer Pursuant to § 549 of the Bankruptcy Code**

**Counterclaim I  - Automatic stay did not apply during suspension**

In Count I, Curtis alleges that the Town obtained the February 2004 default judgment in the Massachusetts Superior Court in violation of the automatic stay. The parties disagree as a matter of law whether the automatic stay pertained while the Bankruptcy Court "suspended" the bankruptcy

proceeding. It is undisputed that the Town obtained a prejudgement from the Massachusetts state court and filed the Municipal Lien Certificates prior to the bankruptcy filing, but obtained the default judgment after the commencement of the bankruptcy case. If the stay was in effect, the entry of the judgment is voidable. If not, the entry of the judgment is an important step in perfection of the Town's lien. The disagreement is especially acute in light of the Town's allegation that it did not receive notice of the Bankruptcy Proceeding, suspended or otherwise..

Ordinarily, the commencement of an involuntary case gives rise to the imposition of the automatic stay. *See e.g.,* In re Student Finance  2007 WL 4225573 (Bankr D Del 2007.) There are precious few cases dealing directly with the issue of whether the automatic stay is in effect while a suspension order has been issued in favor of another proceeding. The majority of reported decisions that impose the automatic stay even though the Bankruptcy proceedings have been "suspended" did so for a limited period of time to enable the parties to accomplish a specific act. The Debtor cites two cases where the creditors were granted relief from stay, and asks this court to infer that the stay was presumed in effect during the suspension. In In re Milestone Educ. Inst., Inc., 167 B.R. 716 (Bankr. D. Ma. 1994), the Court decided to suspend the Debtor's bankruptcy case pending the outcome of an appeal in the state court and granted stay relief to allow the appeal to proceed. In In re Rookery Bay Ltd., 195 B.R. 811, 813 (Bankr. M.D.Fla. 1996), the parties similarly agreed to a suspension order until a pending appeal could be decided in state court. However, these cited cases can be readily distinguished from the case at hand because these bankruptcy proceedings were not suspended pending a decision on a limited issue pending in state court but rather, the entire case was essentially transferred to another forum. The order suspending the proceedings in this case provided that: "All proceedings in this case shall be suspended, subject to being reactivated by further order of this Court

as provided in this Order after motion by any Petitioning Creditor or Lender[,]" and "[t]he Court may lift the suspension of proceedings in this case upon a finding, after notice and hearing, that the lifting of the suspension of proceedings in this case is in the best interests of all creditors and the Debtor." (Order Suspending Proceedings). That language indicates only that the Court could recall the case back to the bankruptcy court if at some point and for some reason, the Bankruptcy court deemed that revival was in the best interest of all parties. In other words, this bankruptcy case, such as it was, sat moribund for well over 2 years while liquidation functions were supervised by a state court.

Interestingly, a recent case from the Bankruptcy Court in the Southern District of New York is the most factually apposite to the facts presented here. In In re Comp%25ania de Alimentos Fargo, S.A. 376 B.R. 427, *441 (Bankr SDNY, 2007), a party asked the court to "suspend rather than dismiss the involuntary case, leave the automatic stay in place, and take another look at the progress in Argentina [where a foreign liquidation proceeding was pending] in the future." The Fargo court declined to suspend the proceedings, indicating that "the automatic stay is not an end unto itself, but a protection a debtor gets to allow it to reorganize. If the reorganization serves no purpose, the automatic stay cannot give it a purpose." The Bankruptcy Court essentially declined to "oversee" liquidation or reorganization proceedings in another court, and dismissed the involuntary proceeding.

The Bankruptcy court in this case chose to suspend the proceedings rather than dismiss them, and that is the law of the case. Nonetheless, the Fargo court's reasoning is persuasive where the sole apparent purpose of the suspension was to continue the stay while the parties pursued their rights in another forum. It is hard to justify application of the stay under the undisputed facts. No order for relief was entered until January 23, 2008. The order suspending the proceedings did not mention the stay and in fact, seems to have contemplated dismissal of the Bankruptcy proceeding at the

conclusion of the case in Ohio. The Debtor did not file schedules, a statement of financial affairs, give testimony at a 341 hearing or submit a single operating report. The Debtor took on absolutely none of the responsibilities of a Debtor under the Bankruptcy Code in Bankruptcy, yet now, some years later, wishes to invoke one of its most powerful protections. This seems both fundamentally unfair and contrary to the spirit of the Bankruptcy Code. To the extent that the stay may have applied, the undisputed facts presented constitute cause to vacate the stay *nunc pro tunc* to the date of the order of suspension, December 17, 2003.

It is also noteworthy that Curtis did not serve the Town with notice of the bankruptcy proceeding until February 2006 when Curtis was required to file a list of its 20 largest unsecured creditors with this Court.[2] The Town did not enter the proceedings before this Court until October of 2006. The Town had filed a proof of claim in the ABC proceeding and filed an objection to the Property being sold in the ABC proceeding. While this confirms that the Town knew about the bankruptcy proceeding and the ABC proceeding, and even participated in the proceedings, it is undisputed that the Town never received formal notice. We look to the Rules to see if the Town had a right to receive formal notice, and whether not receiving such notice excuses the Town from having to apply to the Bankruptcy Court for relief from stay. Rule 2002(f) requires that the clerk of the court to "give the debtor, all creditors, and indenture trustees notice by mail of:...the suspension of proceedings under § 305[.]" Fed.R.Bankr.P. 2002(f) (2005). The problem here is that because of

---

[2] The Proof of Service on the Application to Shorten Time on the Motion to Suspend Proceedings indicates service "via facsimile upon the Office of the United States Trustee and counsel for Fleet Capital Corporation and by regular mail upon the Debtor's 20 largest unsecured creditors and all parties who have filed a notice of appearance in this case" The Proof of Service does not indicate the 20 largest or those having entered an appearance by name and no such list existed in the court's records at the time the Proof of Service was filed. The Debtor also inadequately served the Town of Adams on one of the first matters heard after the case was transferred some two years later.

the suspension order, the Debtor was not required to submit a list of creditors and therefore, it seems that only the petitioning creditors received notice of the suspension of the bankruptcy case in favor of the ABC proceeding. Again, this Court cannot give Curtis the protections it demands when it did not have to comply with any of the filing requirements. Case law also supports the need for formal notice. Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622 (C.A.Colo. 1984)("[A]lthough the [creditor's] attorney was generally aware of the [debtor's] involvement in reorganization proceedings," formal notice was necessary.)

The lack of notice adds to the overall circumstances that indicate that stay relief should be granted *nunc pro tunc.*

Accordingly, the default judgment was not entered in violation of the stay and summary judgment will be denied on Count I and granted on Counterclaim I. Since the automatic stay was not in effect, the takings lien is not avoidable under § 549 as alleged in Count II of the Debtor's complaint, and summary judgement on Count III of the Debtor's complaint is granted in favor of the Defendant.

**Count VII – Liability of Town as Transferee Pursuant to 11 U.S.C. § 550**

**Count X – Preservation of Avoidance for Benefit of Estate Pursuant to 11 U.S.C. § 551**

Debtor moves to recover the "Takings lien" under § 550(a). § 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

Debtor refers to the August 30, 2004 Sheriff's levy on the real property as the Takings lien (Curtis Motion, Ex. 19). The Debtor does not qualify for relief under § 550(a) because the Court has already determined that the transfer was not avoided under § 549. For the same reason, Debtors argument under § 551 fails. Since the transfer was not avoided under § 549, summary judgment on Count VII and Count X of the complaint are granted in the Defendant's favor.

### Count IV – Failure to File Certificate Under Mass. Gen. Law ch. 83, § 16

Although they agree on the underlying facts, the parties disagree as to which Massachusetts statutes govern the wastewater treatment charges and the filing of the municipal lien certificates. The Debtor argues that the wastewater charges and related finance charges arose pursuant to contracts and these obligations were not secured by any collateral. The Debtor believes that Mass. Gen. Law ch. 83, §16 governs the agreement between the Debtor and the Town. The Town disagrees and points the Court to Mass. Gen. Law ch. 40, §22F. The crux of the disagreement is whether the charges the Town imposed on the Debtor were sewer charges. The Town contends that although the wastewater ran through the sewer system, Curtis was not being charged under Mass. Gen. Law ch. 83, §16, which governs sewer charges. Rather, it claims, the Debtor was being charged for services provided by the Town, *viz* treatment of industrial waste, and therefore not subject to "sewer charges." The town has adopted Mass. Gen. Law ch. 83, and has also adopted Mass. Gen. Law ch. 40, §22F. Since the Town Code specifies which sections of a particular chapter it has adopted, yet did not specify sections in this instance, it is logical to infer that the Town meant to adopt all of chapter 83. While it is true that ch. 40, §22F allows a town to fix reasonable fees for any services rendered by the city, it specifically states that chapter 83 supercedes this section.

The Town points to the Town of Adams Ordinance Chapter 93, which defines "Industrial Wastes" separately from "sewage." While this is true, ch. 83, §16, applies charges "for the use of common sewers and main drains...which shall be paid by every person who enters his particular sewer therein." Further, the Town ordinance itself defines a "Public Sewer" as "[a]ny sewer owned or maintained by the Town...that discharges into the Town's wastewater treatment works." Thus, the Town ordinance is not in contradiction with ch. 83, §16.

Finally, despite the Town's argument, Massachusetts state courts have applied 83, §16 governing sewer charges to water treatment cases. *See* Merrimac Paper Co. v. City of Lawrence, 1995 WL 1286562 (Mass. Super. Aug. 29, 1995). The Town correctly argues that the decision in Merrimac did not hold that ch. 83, §16 was the only statute that can apply to wastewater treatment. However, neither are there any cases that hold that ch. 40, §22F is the statute to be applied. Given that the contract between Curtis and the Town did not mention which statutes govern the agreement, the fact that the Massachusetts Courts have applied ch. 83, §16 to wastewater treatment in prior cases undermines the Town's argument. Therefore, in this case, Mass. Gen. Law ch. 83, §16 will be applied to the sewer charges.

Ch. 83, §16(A) "states that a Town Clerk must file an acceptance of Chapter 83, Section 16(A)-(F). The wording of the statute is ambiguous as to exactly when the certificate must be filed...[A] possible interpretation is, [ ], that a certificate of acceptance is to be filed against the property of the person whose unpaid bills are to be treated as a lien..." Anglo Fabrics Co., Inc. v. Town of Webster, 2002 WL 31187829 at *14 (Mass. Super. Jul. 1, 2002). "Specifically, a sewer user fee that is not paid on the original due date becomes a lien on the property being served by the sewer." Id. *citing* Mass. Gen. Law ch. 83, §16(A), (B). While Adams did not file a certificate, the

Massachusetts Superior Court has held, "[t]hat the Town may not have recorded a certificate...does not relieve the plaintiff of its obligation to comply with the abatement procedures because the plaintiff cannot show it was prejudiced by this procedural defect." Id. at *15.  The same applies to Curtis.  In Town of Webster, the Court went on to detail the administrative and judicial procedure that a party objecting to the lien must follow.  Ch. 83 is very specific in requiring that any party objecting to a lien first "apply for an abatement thereof by filing a petition with the board or officer having control of the sewer department." Id. *citing* Mass. Gen. Law ch. 83, §16(A).  The "application for abatement must be filed within three months of the assessment...In order to avoid frustrating the statutory scheme, the administrative procedure must be exhausted before the court can intercede. This rule applies even if the plaintiff never initiated the administrative proceedings, and even where the administrative relief is no longer available."  Id. (*citing* Gallo v. Division of Water Pollution Control, 374 Mass. 278, 288 (1978)).

Following the precedents set by Massachusetts state courts, since the Plaintiff did not pursue administrative remedies to contest the sewer charges, this Court cannot reduce the lien against Debtor's property.  Thus,  Debtor's motion for summary judgment on Count IV is partially granted in the Plaintiff's favor in that Mass. Gen. Law ch. 83, §16 governs the agreement between the Plaintiff and Defendant.  However, summary judgment on Count IV is ultimately granted in favor of the defendant because the Town did not have to file certificates in order to perfect its lien.

### Count VI – Declaratory Judgment as to Municipal Lien Certificates – Mass Gen. Law ch. 60, §23

Curtis claims that the Town was required to file Municipal Tax Liens pursuant to Mass. Gen. Law ch. 60, §23.  That section holds that "[t]he collector of taxes for any city, or for any town having

more than five thousand inhabitants, ..., shall, on written application by any person, and within ten days thereafter, excluding Saturdays, Sundays and holidays, furnish to such applicant a certificate of all taxes and other assessments, including water rates and charges, ... which at the time constitute liens on the parcel of real estate specified in such application and are payable on account of such real estate." The statute further mandates:

> "A certificate issued on or after January first, nineteen hundred and eighty-one, ...may be filed for record or registration, as the case may be, within one hundred and fifty days after its date, and if so filed shall operate to discharge the parcel of real estate specified from the liens for all... rates and charges which do not appear by said certificate to constitute liens thereon, except taxes, assessments, or portions thereof, rates and charges with respect to which there has been filed for record or registration evidence of a taking or a sale by the municipality or concerning which a statement or order creating or continuing such lien has been so filed under any provision of law, if said lien can be discharged by the recording or registration of an instrument other than a certificate under this section; but a certificate issued under this section shall not affect the obligation of any person liable for the payment of any tax, assessment, rate, or charge by reason of being the assessed owner of such parcel of real estate at the time any such lien became effective."

The Massachusetts Superior Court has held:

> It seems to us that the clear design of this statute was to furnish a ready means by which a person interested in a parcel of land could obtain definite and indisputable information of all municipal liens for assessments chargeable upon the land...Neither can we accept the city's contention that, because the special statutes relative to sewers in Worcester...give the city a lien for two years after the assessment or after the time to which payment has been extended, a lien for a sewer assessment in Worcester cannot be discharged before the expiration of that time by failure to mention it in a certificate...[t]his statute is a general law intended to be effective throughout the Commonwealth. We see no reason why liens for assessments in Worcester, by whatever statute they arise, may not be lost through the operation of section 23, before they would otherwise expire, as may such liens in other cities and towns. It follows that the lien in question was discharged because the assessment 'accrued' more than three years preceding the date of the certificates and was not mentioned therein.

Meenes v. Goldberg, 122 N.E.2d 356, 360 (Mass. Super. Nov. 2, 1954). Although, the Town has not specifically adopted ch. 60, §23, the law is "intended to be effective throughout the Commonwealth." Id. Thus, the charges listed on the Municipal Lien Certificate dated October 1,

2003 going back to October 1, 2000 are owed by the Debtor. The Debtor does contend that the certificate does not list the charges accurately, and that will be determined at an evidentiary hearing.

The Town does not specifically address the Debtor's reference to ch. 60, §23, but contends that Mass. Gen. Law ch. 40, § 58 governing municipal charges lien is the statute relevant in this case. That statute provides that "[a]ny city or town may impose a lien on real property...for any local charge or fee that has not been paid by the due date, said lien shall be known as the 'municipal charges lien'; provided that a separate vote at a town meeting, or by a city or town council is taken for each type of charge or fee." The Town has not adopted this provision either. There is no indication or mention in the Town's papers of a vote having been take at any Town meeting. Additionally, this law does not mandate that it is effective throughout the state. Therefore, the assessments that accrued within three years of the date of the Municipal Lien Certificates and were listed on the certificates, are owed by Curtis to the Town.

Debtor's motion for summary judgment on Count VI is partially granted: Mass. Gen. Law ch. 60, §23 applies in determining the validity of the Municipal Lien Certificates. However, the exact amount of what is owed to the Town and whether the amount were listed correctly in the certificates requires an evidentiary hearing and therefore, summary judgment must be denied on Count VI.

**Count IX – Objection to Claim Pursuant to Federal Rule of Bankruptcy Procedure 3007**

Curtis seeks partial summary judgement on this count, asking that the Town's second claim be reduced because the Town is not entitled to post-petition interest on its unsecured claim pursuant to 11 U.S.C. § 502(b)(2). Debtor makes this motion based on the assumption that wastewater charges cannot be secured by a takings lien since it was obtained by violation of the automatic stay and is avoidable under § 549(a). Additionally, in making this objection, Debtor assumes that Adams' claim

16

for wastewater charges cannot be secured because the Town failed to file a certificate under Mass. Gen. Law ch. 83, § 16(A), and for failure to list those charges as required by Mass. Gen. Law ch. 60, § 23.

However, those assumptions no longer apply. This Court has granted stay relief *nunc pro tunc* and therefore, found it was not violated; that although ch. 83, § 16 applies, the Town's failure to file a certificate does not relieve Curtis of its debt or prevent the lien from attaching; and finally, that the validity of the charges on the municipal lien certificates are to be determined after an evidentiary hearing. As such, Debtor's motion for summary judgment on Count IX is granted in the Defendant's favor.

### Counterclaim II - Compensation of dissipation of assets subject to lien

Curtis asks the Court to rule that the Town's claim is now unsecured, if not for any of the above reasons, then because the proceeds of the sale of the Debtor's personal property located in Adams were already used to satisfy a portion Fleet Capital Corporation's claim. According to Curtis, Fleet held a properly perfected priority security interest in all of the Debtor's personal property in Adams. Given that the Court has ruled above that the extent of Curtis's debt is yet to be determined and also to be determined is which of the Town's municipal lien certificates are valid, the Court cannot yet rule on the proceeds to which the Town is entitled.

Fleet perfected its security interest in "[a]ll of Debtor's now owned and existing and hereafter acquired accounts, inventory, equipment, fixtures, chattel paper, general intangibles, instruments, documents, investment property and other personal property, wheresoever located, together with proceeds thereof, including without limitation, the property described..." by filing a UCC certificate on March 7, 2001. Therefore, the issue becomes whether Fleet has priority over the Municipal Lien

17

Certificates filed on October 1, 2003.

The Town does not address Fleet's security interest. However, in its brief the Town states, "In Massachusetts, a Municipal Lien Certificate more often is prepared by a municipality as a service to a third party conducting its 'due diligence' when, for example, purchasing a property or recording a subdivision. According to Ms. Denault, while not a requirement, any party looking to secure any type of interest in a parcel of land does so at its own risk, if it does not obtain first a Municipal Lien Certificate establishing the existence of municipal liens." Therefore, it seems as though under Massachusetts law, Fleet ought to have requested Municipal Lien Certificates determining what municipal liens existed at the time Fleet was securing its interest in the Curtis property. Therefore, Fleet's lien would be subordinated to the extent of Curtis's debt to the Town as of March 7, 2001. It would be inequitable for the remainder of Fleet's interest to be subordinated since the remainder of the municipal charges arose after the perfection of Fleet's interest.

Plaintiff's motion for summary judgment on Defendant's Counterclaim II is partially granted in that Fleet has a priority over any municipal charges that arose after March 7, 2007 and partially denied because the Town interest has priority for charges arising prior to the UCC filing of Fleet's interest. The Court refrains from determining the amount owed to each party until an evidentiary hearing takes place.

## CONCLUSION

Summary judgment is partially granted in the Plaintiff's favor on Count IV of the complaint (Failure to File Certificate Under Mass. Gen. Law ch. 83, § 16). Mass. Gen. Law ch. 83, § 16 governs the agreement between Curtis and the Town but the failure to file certificates does not invalidate the charges assessed against Curtis. Summary judgment is also partially granted in the

Plaintiff's favor on Count VI (Declaratory Judgment as to Municipal Lien Certificates – Mass Gen. Law ch. 60, §23).  Mass Gen. Law ch. 60, §23 does apply but the Court cannot assess the extent of the Plaintiff's obligation without an evidentiary hearing.

Summary judgment is granted in the Defendants favor on Count I (Avoidance of Lien Entered in Violation of § 362 of the Bankruptcy Code), Count III (Avoidance of Transfer Pursuant to § 549 of the Bankruptcy Code), Count VII (Liability of Town as Transferee Pursuant to 11 U.S.C. § 550), Count IX (Objection to Claim Pursuant to Federal Rule of Bankruptcy Procedure 3007), Count X (Preservation of Avoidance for Benefit of Estate Pursuant to 11 U.S.C. § 551), and Counterclaim I (Automatic stay did not apply during suspension).

Summary judgment is denied on Counterclaim II (Compensation of dissipation of assets subject to lien).

Counsel for Defendant, Town of Adams should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: January 9, 2008